It looks like we have everybody here. Uh, welcome to the, uh, first district appellate court, the first division of that court. Uh, my name is Terrence Lab and I'll be presiding today along with my colleagues, justice, uh, Aurelia Puchinski and justice Michael Hyman. This is the case of Peterson versus, uh, Stefania Francesca Devita, Airbnb Inc et al, uh, the case number 1-23-0356. Uh, we're looking for about 20 minutes a piece, uh, from each side. Uh, the appellant should save five minutes, let's say for a rebuttal. And, uh, why don't we go ahead and hear from the appellant? Wait, wait, can I ask a question? There's three lawyers present. I, is there three parties? I thought there was only two parties. Judge, uh, this is Matt Saltzman. I'm on behalf of the plaintiff and the appellee here today. Um, I know there's a number of appearances that were filed on behalf of Airbnb. Whoever it was, he, he disappeared. So, oh, okay. Disenfranchised. Okay. Let's proceed. All right. May it please the court. My name is Rachel Kummer and I represent Airbnb and your honors, I would like to reserve five minutes for rebuttal. No problem. Your honors, this matter belongs in arbitration pursuant to the mandatory arbitration provision between Mr. Peterson and Airbnb. Airbnb provides an online. Let me ask you a question. Uh, first of all, uh, your issues presented, uh, you don't agree with the plaintiff with regard to what the issue is in this case, the plaintiff believes that the issue is whether, uh, he agreed to the arbitration agreement relating to the occurrence of the alleged issue. But he, there, there is a portion, as you know, in an appellate brief, I assume you're experienced appellate lawyer, uh, where you would say the issues presented. And actually you both have the same wording pretty much whether the circuit aired and denying the Airbnb defendants motion to compel arbitration. Now, but you can go on for three more lines. So you disagree with the issue presented. Is that right? Well, I believe he has simplified the issue on appeal down to a point of which we would agree. We agree that the question on appeal is whether the lower court aired and denying the motion to compel arbitration. Our issue presented simply attempted to present these specific issues that we believe are the reasons that the lower court aired, that's not for the issues presented, that that's more, that's your argument. Uh, my understanding is issues presented is not to us be argumentative. Is that your understanding or not? I respectfully, your honor, we have crafted the issues presented, um, with the level of precision that we typically present in an issues presented section. But I would agree with your honor that the key issue presented is whether the lower court aired, uh, in denying our motion to compel arbitration, which it certainly did. Okay. So in regard to that issue, uh, the most important aspect has to be the terms of service. Yeah, well, yes, your honor. The terms of service is the agreement that Airbnb has with each of its registered users, including Mr. Peterson. And that terms of service includes the mandatory arbitration agreement. And we were saying that. So the terms of service is, uh, by my count, 86 pages, single spaced, is that correct? Uh, it is, it is a long agreement and it takes up a number of, um, pages in our papers that we have presented in the appendix, but I have not personally counseled them, your honor. Well, I, I did. And, uh, it went from page, the number of pages was, uh, from SR 126 to SR 202, which I got about 86 pages, single space, but quite long, isn't it? Our terms of service are, is a careful agreement. Um, and it is, my question was, it's quite long, isn't it? That, that is a, that is an extensive agreement. I would agree, but it is long. You have to agree, right? That it's a, it is a, that is a longer contract. I would agree. Okay. That's all my question was. And the, it has many subsections, doesn't it? Throughout. Yes, your honor. There are numerous, uh, parts of the terms of service. That's right. But the only one at issue here is the one having to do with the arbitration provision. Well, uh, let's, let's ask, let's, let's, uh, get a little deeper in there. So, uh, who is the, who are the parties to the terms of service? The terms of service that are applicable in at issue here is the agreement between Airbnb and Mr. Peterson. He entered into my question. My question is your terms of services between who now I'm not that specifically Mr. Peterson, I'm saying in terms of. Uh, Airbnb, who then becomes the other party to this agreement under the terms of service? Well, we have an, a contract that when, when, when a, each registered user enters into the terms of service, that specific terms of service agreement. Where does it say that a registered user? Where, where is that? In the terms of service, in order to enter into, uh, I know, but you said registered user. I just like to know where it says the words registered user. Is that the fine? That is, that is the term that I am using to refer to an individual to the Clickraft agreement by clicking, except to the terms of service agreement. My question, my question is that what you're using, I want to know in this agreement, what the agreement says are the parties I would have to. I mean, the, the agreement refers, the agreement is between the individual who enters into the agreement and Airbnb is an agreement between the individual. It's kind of a circular, you said it's between the person that enters in the agreement, who is the person who enters into the agreement, the individual who clicks, except and registers for Airbnb. Where does it say that? No, that's DeVita, right? That's the homeowner. No, no, your honor. That's, that's the key question here. So there, there are likely two terms of service agreements. There are likely two terms of service agreements that I want to continue that thought, so I want to make sure I understand what you're saying. You're saying that because Airbnb has an arbitration, a clause in their agreement with the homeowner, in this case, DeVita, and, uh, that forms a DeVita then rents out her home through the Airbnb website services. Uh, she becomes an agent for Mr. Peterson who accepts that same arbitration agreement. I think that Justice Hyman and I are both trying to figure out, did Mr. Peterson ever see that arbitration agreement? Was that in anything that he signed? Yeah. Yes, your honor. That is exactly what I am trying to answer. Um, Mr. Peterson entered into the terms of service agreement with Airbnb on three separate occasions. In January, 2017, September of 2018. And again, in September of 2019, but what do you mean by that? You changed the agreement twice. Did he go back on at any time? I mean, how many times has he, you, how many times has he been on this site? Where in the record does it say that he's been on this site more than once? Your honors are, um, lower court papers include exhibits that demonstrate from our internal records, the three times and dates on which he registered and agreed to the terms of service. What do you mean by that? Cause your, your language, when you say that, I don't understand what that means. You know, I think it's right before I signed on today to do this argument with you on zoom, a little, uh, a little box clicked up that said, we've updated our terms of service before you can agree. You need to click on the accept button here to agree to the terms of service. I had to do that in order to join the argument here today. So I previously had joined zoom. I am a zoom user. I have my own zoom account, but as of today, I have additionally accepted me personally, um, the terms of service agreement with zoom as of today in order to enter into this argument. Similarly on three separate dates based on our internal records, which he does not deny in any of his papers, he does not deny that he entered into an agreement with Airbnb on three separate occasions into our terms of service. And our terms of service with each individual step there. Cause, uh, you're getting ahead. So, uh, so he entered into, uh, he, he, he, the terms of service because he's a, a, what a member. Is that it? Is that the correct term? That's right. Your honor. We called them, we called them members. Um, just an individual who registers in order to use Airbnb. That person can do, uh, what Mr. Allegedly did, which is to offer a property or can be a user of Airbnb, which I personally am. And Mr. Peterson is an individual who goes on to Airbnb and tries to rent a property. No, no. So you're saying he, he's a member. Is that word member used anywhere in the, uh, terms of service? We, we, that's a, it's a colloquial term. That's how we have to be very specific. We're enforcing a 20, 86 page contract here in small type that you wrote. So let's use the terms in the agreement, please, because it is in the agreement, your honors. For example, if you look, I'm just trying to, when I opened up the agreement, the first place that I see the term member is under section 7.4, where it discussed cohost, but it's actually in scope page one under scope of Airbnb services, the Airbnb platform is an online marketplace that enables registered users, parenthetical quote members, close quote, and certain third parties who offer services. Um, the members in the third parties who offer the services are quote posts and the services they offer our host services, those things as listings. That's your honor. Excuse me. That's an SR 1 28. For example, it's the first paragraph of the terms of service. It's the scope of Airbnb services right after the table of contents. Okay. Well, let's go before that. So let's go to the terms of services. Please read these terms of service, uh, of services. It says terms carefully as they contain important information about your legal rights, remedies, and obligations by accessing or using the Airbnb platform. You agree to comply and be bound by these terms. So is that basically the same kind of language you're referring to? That, that that's right. It's an agreement between the individual, the registered user or AKA the member. Here, Mr. Peterson and Airbnb. And the terms of service govern the scope of all just relates to the relationship between Airbnb and each such member or registered user. So are there any limitations in the agreement as to, uh, what the agreement governs, well, the specific, it governs only the items that are within its four corners as one would hold for a contract. Um, but I would say most relevantly here, the arbitration agreement is broad. And that's not my question. So my question is, so it would govern whatever it says it governs. Is that basically what you're telling me? I'm saying your honor, like any contractual agreement, it covers the terms that are in the provisions that are set forth, uh, within it. Does the agreement define what it governs? I mean, it, yes. It governs each specific provision that is included within it. It doesn't cover it. Does it say, is it, does it say what it governs? I think it governs the dispute resolution provisions between the parties. Let me read to you what the language is. And this is your, your language, your client, right? Okay. It says the terms constitute a legally binding agreement. Uh, and then it defines that as agreement between you and Airbnb as defined below governing your access to and use of the Airbnb website. So it does say that it governs access to and use of. Now you disagree with that or not? You agree. That's what it governs. It, that specific provision does state that, but in the arbitrage, I'm not talking about the arbitration that you wait, wait, wait, wait, wait, wait, wait, please, please. We're talking about who is involved, what this contract is all about. Don't we didn't know what the really, the first question we have to decide is whether this contract has anything to do with this case. So, and with that, uh, you, you want to go back, you want to go back down to this paragraph or section 19, let's talk about what the terms of service mean. And in terms of service, say they govern your access to and use of both. You have to have access and use. You agree, right? That's what it says. It also governs, I'm sorry, if you keep reading, if you keep reading the very language that you were just citing, it says it governs your access to and use of the website, then it defines that that is part of site, but then if you go on, it says, and the applications and application program interfaces, collectively applications, and all associated services, collectively, the Airbnb services, the services are broader than the website itself. The services are using the use of the Airbnb services, the host services and the use of the platform. You ever use the host program? That's my question. Yes or no. And then my understanding of your honor is yes. Although the part of the record that we have, the record that we have is that he. Let's let's wait, please. Well, let her answer the question. Okay. No, but she's not keeping her operator. You can answer the. She can answer and explain, but that was not an answer first. I want an answer to my question. Yes. He used the host services. He alleges in his complaint that he was a renter or guest at the property in where this is in the complaint, please. Because I have the allegations, paragraph 14. It says that plaintiff Peterson was a guest of inviting guests of a user or booking party or user of defendants, right? Mr. He's the one that agreed to the TOS. Right. Mr. Bannon and Mr. Peterson agreed to the terms of service. That I think is that that is the key point here. Mr. Mr. Peterson. Because you just said that he said that he was invite the guests for Airbnb. He was a renter or a guest, but that's not the key point from my perspective. The key point is that he used Airbnb services on at least three different occasions where we know from our records and he doesn't deny that he himself entered into the terms of services by becoming a registered user and member of Airbnb. He did that on three different occasions, including importantly here with respect to version 10 of the agreement, which was the governing terms of service at  I just had a lab. I apologize. It says user and you access and user access and not, or yours. You said just, uh, he had access. I believe it was a word. He used it. He also, he, he used them. He entered into and became, uh, and he used Airbnb services. What does, tell me what use means. I think the most important point. Okay. That of this is he entered into the agreement. He used our website and became a registered user. He entered into a contract and was a member, but I'm sorry. For this particular rental of this particular property, it was Mr. Bannon that signed, that agreed to everything. Now, the fact that Esther Peterson had previously, or since then become a member or use the services of, or checked out what was available on Airbnb in order to get onto the website, you have to click yes, you agreed to the terms of service. That doesn't mean once you click that, you agree to it forever and ever and ever and ever for any purpose that he, because he never signed up for this property on these dates, he wasn't the one who's looking for this property. And these days was he was Mr. The most important point in response to your comment is that when Mr. Peterson entered into the arbitration agreement that he has with Airbnb under version 10 and the two prior versions, he agreed to delegate all questions of arbitrability to the arbitrator. The terms of service include a clear and unmistakable delegation of issues of arbitrability, including as to its scope, enforceability and applicability to the arbitrator. And under well-established law, that means that this court does not need to make any determination and indeed cannot make any determination about whether this particular incident occurrence allegation falls within the scope of that arbitration agreement. Under the Supreme Court's, the U.S. Supreme Court's opinion and Henry Schein, you know, even a wholly groundless argument that someone's claims fall within an arbitration agreement, if that arbitration agreement includes a clear, unmistakable delegation of arbitrability to the arbitrator, you are compelled, you are required to send the case down to arbitration for the arbitrator to determine whether these scope, that is the primary issue here. And it is dispositive. Mr. Peterson does not disagree that he entered into an arbitration agreement with such a clear and unmistakable delegation of arbitration to the arbitrator. I think I'd be more comfortable with your argument if it had been Mr. Peterson who signed up for this particular property on these particular dates. But when you go on Expedia and you look to see whether you can find a hotel room next January, you may or may not take it. And so in order to use Expedia services, I'm sure there's some sort of, you know, agreement that you click onto, but that doesn't mean that if somebody else runs the property, that you're bound because you've looked at the website once or twice or three times in this case. Your honors, the agreement between Mr. Peterson and Airbnb is not property specific. There is no language in the agreement that talks about it being regarding a particular booking or regarding a particular occurrence. It says that any dispute, claim or controversy arising out of or relating to the terms or to the use of the Airbnb platform or to the use of the host services is subject to arbitration. And the actual inquiry regarding whether these particular claims arise out of the terms, use of the Airbnb platform or the use of the host services is a question that has been delegated to the arbitrator to determine in the first instance. It wasn't for the lower court to determine and it's not for this court. And in that regard, I would specifically refer this court to the most on point case by TOR is from the Supreme Court of Nevada, Airbnb v. Rice in 2022. It's a very recent opinion. And in that case, the Supreme Court of Nevada decided that whereas here the plaintiffs had sued Airbnb, but they did not book the property themselves and yet were Airbnb account holders, that they were bound to arbitrate their agreement, that you had that the ballot arbitration agreement and delegation vision in their Airbnb agreement because they were Airbnb account holders required that their claims had to be decided by the arbitrator. That is squarely on point here. And it and it is governing with this court does not have authorization under the FAA and the Supreme Court's rulings about how arbitration agreements operate to go beyond the clear and unmistakable delegation of arbitrability issues to the concedes that he is an Airbnb user. And I think that's a really important point here. You know, in our we discussed in our opening brief a number of points that he ignored in his reply brief and under this court's clear precedent have therefore been waived and conceded to. And that is that a he's an Airbnb user who accepted the agreement three times that he accepted version 10, which is the very version that was in effect at the time of the reservation and the alleged incident. And he ignored the contractual language of his agreement with Airbnb, and he failed to engage with our arguments that that plain language compels arbitration, which it does on the face of the agreement. Under your theory, if this agreement applied to Justice Pachinksi's Expedia example, OK, Expedia, somebody goes on, rents a room and a friend who happens to be an is invited by the Expedia users, happens to be in the same town, says, come on over to my hotel room and something happens that Expedia user when he or she is in the hotel room that was rented by somebody else. That Expedia user who was injured under your agreement had to arbitrate, correct? So respectfully, I as as counsel for Expedia, but not in this matter, I didn't say that you don't have to be counsel for Expedia. If I follow your hypothetical, if Expedia had the precise same language that Airbnb does in their terms of service so that what we are looking at is not is the language that is before us under the terms of service here about it were, in fact, the exact same language that Expedia has. And I know as a fact that it is similar, but not exactly the same. So but if if it were the exact same language and we're looking at the terms of service, yes, your honor, if if you are if if as Mr. Peterson did, he registered and agreed to these terms of service, they governed his relationship with the contracting party and courts consistently. But he doesn't contract agreements to extra contracting party, but he didn't he was not the contracting party for the for the room. And my hypothetical and I thank you for using my hypothetical, it has the same terms. He did not book the room. He had nothing to do with booking the room. He may not even know the room was booked at the time that he or she was invited to go to the room and he was injured. But you still insist that because he's a member of Expedia that it would have to be arbitrated under the terms. Again, I can only speak to the Airbnb terms of service, but that's what I'm talking about. I'm talking about precisely the same as Airbnb's terms of service, if they were, in fact, the same so that we are looking at the language that is before this court today. Yes, your honor. That's exactly what I'm saying. I'm saying that the contract between Mr. Peterson and Airbnb is these terms of service. And it is a broad agreement. It is a broad agreement. We are comfortable with that. That's what he agreed to. Not once, but three times. And whether that's not a question for this court to decide, that is a question for the arbitrator to decide. In the first instance, the scope of the arbitration agreement, it has been explicitly delegated to the arbitrator and it must be determined by the arbitrator first under U.S. Supreme Court precedent. We can't go any further. But even if we ask the question, let me ask you the extremely broad agreement, correct? It's a broad agreement. I didn't say extremely broad. It's a broad agreement. How broad is it? Tell me. Explain how broad it is. It is a broad enough agreement that any claims, disputes or controversy, any is the plain language, any, I would underline it if I were to do it again, any claims, disputes of claims or controversies must be arbitrated if they arise or relate to those are broad terms to arising and related to or broad terms. Any claim, dispute or controversy arising or related to the terms or the air or the use of the Airbnb platform or the use of the host services must be arbitrated. And that's one of the reasons I think if we look at it where you can be completely comfortable here, the question of whether this contract, whether whether these claims fall within the scope of the arbitration agreement, as we've discussed, has been clearly and unmistakably delegated to the arbitrator. But even if this court were to go on and consider those in the first instance, the only way Mr. Peterson can sue Airbnb arises out of a contractual relationship. He only gets to Airbnb by the use of either because his claims arise out of the terms of service or because his claims arise out of his use of the Airbnb platform or the use of the host services by him. He is he he he alleges that he used the host services when he went to a party there as an additional. No, no, no. He didn't. Wait, wait, wait, wait. Where does it say he used the host services? Well, he alleges that he the host services, the host services are the services provided by the host in offering the property. Right. But he said he went to a party there. That is the use of the host services. No, no, no, no. Come on, Mr. Peterson, you said in his complaint, where does this say he used he used the host services? Where is this? The host services are the services offered by the host. He went to a party there that he used the accommodations. He the. What does the complaint say? I'm asking where in the complaint? I mean, the complaint doesn't even refer to the agreement, does it? Anyway, that's true. That is it assiduously attempts to avoid the fact that he is an Airbnb user himself who has entered into these terms of services on multiple occasions. Maybe that's because we need to decide as an issue before whether it even applies as to whether it goes to arbitration or not. No, Your Honor, respectfully, that's not a decision that this court can make. It's not a decision in your house because he he he concedes that he is an Airbnb user because he isn't taking any position to the contrary. He doesn't deny that he's an Airbnb user. We know that he is. Well, wait, wait, wait. There's a difference between user and member. So he is a member, you said. Well, the terms are defined to be the same. The term registered user, as when we looked at earlier, which is SR 128, a registered user is a quote member. So the terms mean the same. I like registered user. I think it's it's more I think it's more precise from a contractual perspective. He's he he went online. He clicked accept three different times. He accepted the terms of service. He is a registered user, also known as a member. But he doesn't have to deny that he doesn't deny that he has agreed to the terms of service three times. They govern this dispute and they include a clear and unmistakable delegation of questions of enforceability and applicability to the arbitrator. That's who has to decide whether his claims are within the scope of the arbitration agreement here. But even if you were to look at it yourself, which you can't, you need to under U.S. Supreme Court precedent. It's a mandatory referral down to the arbitrator when you have a clear and unmistakable delegation. And I think it's important that, you know, multiple other courts have. Done as much, I mean, you know, across the country, not just the Supreme Court of Nevada, but also the Supreme Court of Florida and the D.C. Circuit, the Northern District of California and the Southern District of New York. And many of them don't don't have the same faxes here. OK, so the right case is almost precisely on point. I just said many of the cases you just cited don't. The race case might be different. But I said many of the cases you just cited in a very broad coverage do not. So, yes. So the race case might be right, might be wrong. As you know, we don't have to follow it, correct? Well, that's true. But it is exceptionally persuasive authority. It is squarely on point. I think it's one of my favorite quotes from a different jurisdiction is from the D.C. Circuit's 2021 Selden opinion, which is also very close here. We know from our own internal records and Mr. Peterson doesn't deny that he signed up for Airbnb using his Facebook account. And as the D.C. Circuit held, affirming an order of arbitration, a quote, reasonable person would know that by signing up, he would be in agreement to Airbnb's terms, even if he used his Facebook account sign up. Close quote. Mr. Peterson used his Facebook account. He agreed to the terms on three different occasions and he agreed to mandatory arbitration. And most importantly, he agreed to delegate any issues as to the scope of the arbitration agreement arbitrator. That has to be the first move. OK, hang on, hang on. We're already half hour into this. Why don't why don't you wrap up? We'll hear from me. I have another question with regard to the Washington case. Why. Doesn't. No, unfortunately, this is 11. I lost my thought with regard to that other case, the. Court made a decision that the arbitration agreement would apply, correct? That's right. OK, well, you're telling us we can't even decide that. Correct. They will. They affirmed an order compelling the matter to arbitrate. Well, it doesn't matter if it's a firm. They simply ordered the matter straight to arbitration. That's what they decided. They discussed it, didn't they? You're telling us we can't even look at this. You're saying, no, this is that we can't even discuss or look at or determine because it doesn't matter whether it's an affirmation or reversal. You're telling us that we are have no jurisdiction to make that decision, that that has to go to arbitration if it's the same agreement. Why could it be discussed in Washington? But you're saying we can't. Oh, no, you're right. That's that's not what I'm saying. I'm saying you certainly it's not a jurisdictional question. This this court has. During the U.S. Supreme Court's precedent and Henry Shine, which says that you must, when there is a clear and unmistakable delegation of issues of arbitrability to the arbitrator, you must there refer the matter to arbitration. This court has jurisdiction and should. And under the Supreme Court's precedent, has no choice but to vacate the lower court's decision and compel this matter to arbitration. And but as a jurisdictional matter, you're taking it to a stay. We have a choice. And that's what's before us. Right. You say it should go one way. They say another way to go one of the two ways. But we can look at that issue as they did in Washington and they agreed with the lower court. I mean, you can look at the four corners of our arbitration agreement and find and see clearly that it is clearly an unmistakable that there is a delegation provision which governs here. And under it, it's certainly true that while the Nevada Supreme Court's opinion and rights is merely persuasive authority, which is squarely on point, the U.S. Supreme Court's opinion and Henry Schein is governing precedent. And whereas here you have a clear and unmistakable delegation of arbitrability to the arbitrator, even if even if you thought my arguments for why this should be compelled to arbitration were, quote, wholly groundless, you would still have to send it to the arbitrator to debate that determination as to scope. That is U.S. Supreme Court precedent is certainly controls here, Your Honors. But I'll reserve my remaining five minutes. All right. Thank you very much. Let's hear from the appellee. Good afternoon, Your Honors. My name is Matt Saltzman. I represent Andrew Peterson, the appellee here. You know, I don't even think I need 20 minutes to be able to address what is really going on here and what the actual issue and what's happening is the defendant is attempting to take a contract that was entered into between Airbnb and the actual user and renter of the property, Bannon, and blanket apply this contract with no end date into perpetuity to everyone in the world, including non-parties to this rental that has ever signed in to the Airbnb app, no matter what state, what country, what they are attempting to do. And if the court were to. They're attempting to do it. It depends on what the terms of service are, right? It depends on what's in that agreement and what was agreed to. And they're saying that in the agreement, it says that they can do that. Now, if you're saying otherwise, we're in agreement. Does it say otherwise? We're saying that this agreement that allegedly applies to Mr. Peterson does not, in fact, apply to Mr. Peterson, and it doesn't apply to someone like myself who has simply just used the app once many years before. And then now I would have blanket and forever. Why is that two terms of service? You have to tie it into the term. We just can't say, well, it's irrespective of what's in the agreement. Is that what you're saying? It doesn't matter what the terms are. That's what's taking place here. Effectively, judge, if the court were to extend Bannon and the defendant's contract to the plaintiff by simply opening the app, not related to any rental of the property, any assent to the terms of the rental of the property or even any review of the actual rental agreement of the property itself, the consequences would be absurd. Why can't they do that? But why can't under this agreement? They said it was very broad, right? I want to use the word very. Oh, it was broad, but she said it was broad. So. So what is the interpretation? Why can't that be enforceable? If, if the individual who goes on, is there anything in the agreement itself that would be contradicted that it's that broad, you know, the plaintiff here did not assent to the terms of the rental agreement. In the contract between Airbnb and Mr. Bannon for the rental of this property. That's the biggest issue here. And ultimately it's comparable to. If I were to download the McDonald's app and use it, every time I walk into a McDonald's for the rest of my life, I'm in a contract with McDonald's. And in fact, my phone becomes a holder of hundreds of contracts that are in perpetuity with no ending and no true definition simply by using an app. And I think that the implications today are going to be widespread. Isn't that already the rice case? Wait, wait, wait, wait, but isn't that already a law? Take Expedia as another example, whatever they have in their terms, but these terms have been enforced as we've heard. And is there anything I'll ask you one more time. Is there anything in the terms of service that you can point to that indicate that in the circumstances of this case, they don't apply, we don't think that the including the terms of service applies to Mr. Peterson in this instance. And we don't look specifically at the language of the terms of service because we don't get there. And I think ultimately that's the biggest issue here. And again, I don't think that explain that. How do you not get there when it's the very contract that don't we have to look at the contract? The plaintiff is not a party to this contract judge. That's the issue. The parties of the contract for the rental of the property, which is agreeing to do is, is host that service for Mr. Bannon. There's no privity with, with Mr. Peterson. He's not a party to this contract. He's not signed any agreement for the rental of the property. And he has not assented to any terms of service that include an arbitration clause. It's quite the contrary. And I want to make sure that I bring up the fact judge, if I may. Well, no, but I like you to respond to what the other side is saying, rather than your defense, you know, your response. Okay. What the other side is saying is that the terms of service provide a broad coverage of what happens once you become a member and you're saying, well, you don't even look at the terms of service because he didn't rent, but that, that, that does not address my question. And it does not address what council is saying. To directly address your question in the context of the argument that council just made, then the agreement that plaintiff would have had. And again, we agree. We, we argue that there isn't one, but any sort of agreement that plaintiff would have had with Airbnb Airbnb would be with respect to the use of the websites, not the rental of the property. And it's a completely different contract here. And that's what we're trying to say. Our claims do not in any way arise out of the contract that Bannon and Airbnb entered into for the use of the property. If council is trying to implicate that our simply signing on to the websites. Makes us a party to a rental agreement between Bannon and Airbnb. That's completely incorrect. The terms of service that again, and this is directly responding to your question with respect to defendants argument earlier, the terms of service would apply to governing use of the website and the applications. And ultimately there's a separate agreement that Airbnb has with Bannon to actually rent the property and for use of the property, aside from simply these quote unquote terms of services that apply to being a member that are trying to be blanketly applied to any scenario whatsoever. And our claims here do not arise out of the agreement between Bannon and Airbnb. And I believe we've argued that rice shouldn't even be considered here. However, it's been brought up. So let me address it very briefly. It is just persuasive precedents, but I think the most important part of rice is contained within the very specific dissent and the dissent brings into play. From, and it's, and there's two justices that descend in this one Stiglitz and Herndon, and they say that the consequences of applying this particular scenario where a user who did not agree specifically to the terms of the use of the property, but rather are just somebody who signed into the app are absurd consequences because ultimately what's going to happen is it's going to. In effect, if the court were to find that the plaintiff here, Mr. Peterson is a party to a contract between Bannon and Airbnb, when he had absolutely nothing to do with that bargain for exchange, then every single person that has ever signed into a website that steps on foot of a property of that website's owner is essentially in contract privity of contract with them and is bound by the terms of that agreement. That's simply not the case. And that's exactly what the dissent says. And it warrants potentially a court like your honors here that doesn't have an on-point decision in this particular set of facts that if you were to impose this contract between Bannon and Airbnb on Peterson, the consequences would be endless, not only in quantity of cases of people that would be bound by an desire to agree to, or for a rental of a property, but also in time in perpetuity, if this happened 50 years from now, ultimately the fact that someone signed in a website, if they haven't updated their terms of service would still be now as a matter of law bound to a contract that was entered into and bargained for by two completely different parties that that user, like Mr. Peterson had no knowledge of, had absolutely no agreement to. He's not an agent as we've argued in our brief. That's very clear. Equitable stop will clearly does not apply here. And the dispute in and of itself doesn't arise out of the rental of the property. It's a tort case regarding injury and regarding some of the representations that are held out by the represent, by the renting of the property. And in this case, to try to impose the contract between Bannon and Airbnb on the plaintiff, again, has endless consequences that I think the court really needs to consider in the context of the Illinois decision that I think is going to be very controlling on every case involving an Airbnb contract for use of the property and completely inconsequential users and passerbys. And that's another thing. If a passerby goes past the property and he's used the Airbnb app five years ago and something happens in the context of that property, he's bound to a terms of service between Bannon and Airbnb. That's absurd. And that's what's attempting to be essentially asked of your honors to impose here is to say that, hey, not only has he agreed to the contract's terms between Bannon and Airbnb, but by simply being a user now, he's bound to the terms of their arbitration agreement in the context of his injury case, a tort case that has nothing to do with the rental of the property or the use of the website. In fact, there is no nothing in the record that shows that Mr. Peterson used this website in any way to rent a property. There's nothing that says that he's done anything beyond simply signing into the site. And as we all know, your honors, just like counsel indicated today with Zoom, you have to click to be able to enter the site in and of itself. And now at this point in time, has counsel assented to every single case being brought through Zoom's terms of service? Of course not, especially not an injury case where ultimately my client now has suffered severe and permanent injuries that we, again, allege have nothing to do with Bannon and Airbnb's rental. And the underlying court decided, absolutely, this is an issue that should be brought before the court in companion with my case against the owner of the property as well. And I just want to ask, Bannon and Stein's contract enters into the agreement with Airbnb to rent this property and he has a party and he invites some friends over and they all come over. So the defense is saying, well, by coming to the party, they all agreed to this. And besides that, this particular plaintiff had used the platform before and had signed on to the terms of service. So I'm wondering, so in order to make the defendant's point of view stick, are you suggesting that if you rent a property and you have 15 people in your family staying in this beach house, that every single person that you've invited to be in this property has to be named and listed and sign a term of service with Airbnb to be allowed in the door? Or are you saying that the person who signed the contract has a duty and agreement and you're going to be bound by it? So I'm trying to think like in my insurance policy for my car, it covers anybody who drives my car with my permission. So God forbid anybody who's driving my car with my permission and had some accent. The first thing the insurance company would say to me is, was this guy driving your car with your permission? So here we have Mr. Bannon's permission and Mr. Bannon is using it based on his agreement with Airbnb. So I can see where it's very complicated and I can see where the specific terms in each one of these terms of service is going to be different and it has to be specifically very clear and specific to the case. I'm having trouble finding how, without any knowledge of Mr. Peterson at all, being at this house and without any knowledge or agreement by Mr. Peterson of the terms of service for the use of this particular house, this defendant can say, oh, well, you're bound by it anyhow. So I guess I'm still having trouble with that. Yeah, I think it's a really good question, Judge, and allow me to respond, please, briefly. I think the ultimate question then is, what is the claim that would be brought against Airbnb if that claim arose out of the actual use of the property? Perhaps the property was unable to be enjoyed or the property was unable to be used for some reason. And they're saying that they lost something financially because of the fact that they went out to that property. And now I've got losses because I can't use the property, which is what ultimately Airbnb has within the scope of those terms. Then, yeah, I think that might be something that would be brought within the scope of the agreement. But this claim here has nothing to do with that. And I think that we need to remember that this is a contract that Airbnb wrote. If it's ambiguous, it's construed against them. And quite frankly, that's on them. And if they haven't made that clear, then they need to make that clear. But it isn't here and to the contrary. And I think this is an important distinction and an important way to sort of draw an analysis is that in your honor's example, if an individual rents the property with Airbnb and they bring people over to the property. To show that this is preposterous, the way that it could be implicated on people who simply have an app, the counterside of that would be that if 14 people did come to the house, like your honor suggested, only the ones who have the app would then be subject to those terms of service. Right. What about the other ones? What about the other ones? Exactly. And so what this does is it creates sort of a fictitious environment as in terms of who's actually covered by these agreements that remember Airbnb Road, it's their burden. It's if it's clear, there's nothing there's nothing in the I'm trying quickly to find it, but there's nothing that was actually a user is you, you, Mr. Bannon and everybody that you let in the door. Right. And if they intended for that contract to be imposed on anybody who walks in the door and not just invite a judge. No, no, no. We'll just keep it with Mr. Bannon. Let's let's keep it now. So we've got this agreement with Mr. Bannon. He signed on. He's paying the money. He filled out the form, blah, blah, blah. He's saying he's the user. And is there anything in what he signed, Bannon signed that says to Bannon, hey, Bannon, everybody that walks in the door or while you're there is covered by the same. Arbitration, nothing, because they're implying that simply by signing on to the app, we can sleep well at night knowing we're going to try to blanket apply this agreement to any human being on the planet that comes into contact with this property. It's simply unconscionable. It can't be extended to someone like Peterson in this case. And again, remember, we have to remember that this is in the context of a tort injury claim, not in the context of a contractual breach that says, hey, I took a flight. I got out there. I'm out my flight now because the property doesn't exist or the doors don't close. That's a different situation. In which case you're trying to support a cause of action directly based upon the use of that property between Bannon and Airbnb, in which case I think it would apply. But in this particular scenario, what we're alleging that the action against Airbnb is he is not preempted by the fact that he simply has the app on his phone. And your honors, I must stress the importance to this court that this ruling that ultimately your honors are going to hand down and perhaps might end up at the Supreme Court is going to ultimately dictate the way that every app within the state of Illinois is accessed and then how those terms would apply to unintended users or passerbys or other people that aren't in an actual privy of contract with the company that's holding that, you know, that agreement out, whether it be for rental or property or for simply ordering groceries or ordering McDonald's food. And now every time I walk into McDonald's, I'm supposed to buy their terms. I'd ask you to wrap up, please. Sure. Your honors, I think it's extremely clear. My brief sets this all extremely clear set forth. The fact is, is that dispute does not arise out of these terms. These terms cannot be imputed to Mr. Peterson. He is not in privity. He is not assented. Many of the cases that counsel refers to the person that is the other party is a user. He's the person who rented the property. It's a unique situation. And I think the court needs to take into consideration the very severe implications, policy and then ultimately slippery slope that can be created by allowing Mr. Bannon to be held to the terms of this agreement. Thank you, your honors. OK, let's hear some rebuttal. Thank you. Yes, your honors. There are no severe potential repercussions and there are certainly no slippery slope here because we are not asking this court to apply the agreement between Airbnb and Mr. Bannon. In this case, we are asking this court to look to the agreement between Airbnb and Mr. Peterson, the terms of service themselves. Sorry. Yes, your honor. Let me ask a question. The hypothetical that was raised by Mr. Saltzman. This agreement, this accident, Mr. Jones, who is a member of Airbnb website, happens to be walking down the street and decides to take a shortcut through the where this property is at the very moment that the porch collapses and he's injured. Mr. Jones is injured as a result. Now, the position of Mr. Saltzman is that Mr. Jones should not have to arbitrate under this circumstances, I assume. Tell me yes or no. You would say yes, Mr. Jones, who happened to take a shortcut. Past arbitrary, correct. I would say Mr. Jones certainly has to arbitrate the scope of the arbitration provision that would have to be arbitrated in the first instance, and it would be for the arbitrator to decide whether something about the fact that he was taking a shortcut or some other aspect of his claim in this hypothetical rendered it inside the scope of the arbitration or outside the scope of the arbitration agreement. But the question that Mr. Saltzman raises before this case, it's not a question. It is not the ultimate question of whether his claims need to be in arbitration. It's a scope question. You have to send the scope question down for the arbitrator to make that determination in the first instance. And I would like your honors momentarily to respond to Judge Justice Pucinci's comment about whether there is anything in Mr. Bannon's agreement with Airbnb, which is the same as Mr. Peterson's agreement with Airbnb, but they are two distinct agreements. Both Mr. Bannon, by agreeing to the terms of service and Mr. Peterson, by agreeing to the terms of service, agree to this language. And that is language I would point you to on page SR-130. But did they both agree to this property on these days? That's right. My understanding is that only Mr. Bannon signed the contract for this property for these days. I think that's it's so important. The contract that any party has with Airbnb is just the terms of service. Wow. So Airbnb just swallows up everybody that ever goes onto its website and says forever and a day. You're ours now. We got you. That's certainly not what I said, and that's not what our agreement says, Your Honor. What I'm saying is that the rental contract, Mr. Peterson, has some sort of specific rental contract. Rental contracts are between individual hosts and individual individuals who want to rent the property. Airbnb's agreement with its registered user, its agreement with each of its registered users, is the terms of service. And both Mr. Peterson and Mr. Bannon entered into that agreement. They each have a terms of service agreement with Airbnb. And to your prior question, the terms of service agreement in paragraph 8.1.3. Provides that if you book a host service on behalf of additional guests, you are required to ensure that every additional guest meets any requirements set by the host and is made aware of and agrees to these terms and any terms and conditions and rules and restrictions set by the host, which is to say that Mr. Bannon was contractually required to make sure under your prior hypothetical that anyone he invited to the property that he had rented through the Airbnb platform was aware of and agreed to the terms of service. But we don't have to get that far in this particular instance because we know that Mr. Peterson already had specifically agreed to the terms of service himself on three prior occasions. OK, and therefore, as Mr. Salzman said, the other six other people that were never on Airbnb are not bound by this arbitration agreement. Is that correct? That that is incorrect. That's that under the provision that I just pointed to, Mr. Mr. Bannon and Mr. Peterson were each individually required by the terms of service in the instance when they were booking on behalf of individual other additional guests to make sure those additional guests also agreed to the terms of service. More than that. That's why I would say, although it's not for this court to wait, wait, wait, wait. Hold up. Hold up. You just said Peterson booked this. No, no, no, no. That's what he agreed to the terms of service. He did not agree. Who said the word booking? OK, yeah, it's in the record. OK, you said the word booking. You take that back, right? He did not book. He did. He did not book this property. He did not book this property. Is his name anywhere associated with the booking by Mr. Bannon? He associated his name, his identity, anything about him. Is it anywhere in there? He was Mr. Bannon in his allegations in our internal records do not have his name associated with the booking of the Galena property. You don't know anything about any of the about Mr. Peterson. So that now that that statement is untrue. Your honors. We know a lot about Mr. Peterson. We know that. Let me be more specific with regard to this booking. There is no information about Mr. Peterson. Is that correct? That is correct. OK, that is what I was speaking with. Right now, so you have a lot of information because you keep every single time somebody goes online. Apparently you retain everything that individual does. Is that what you're telling us? So that. So, you know, I don't believe that I can't speak to that one way or the other, the extent of our records, I just know that we that we know that he assented to the terms of service on the three days that we stated. OK, that's all you're saying. OK, that's the point I was trying to make there. The other point I wanted to make in my in rebuttal is that as under principles of agency and equitable estoppel well recognized by this court, Mr. Peterson can be held to the terms of the service agreement with Mr. Bannon. But that is not our primary argument. Our argument is that his own agreement with Airbnb requires this matter be compelled to arbitration for given the clear delegation clause. And therefore, we would ask that this court vacate and remand the lower court's decision and send it down with an order that they compel this matter to arbitration and enter a stay of any further proceedings pending that arbitration. And thank you, your honors. Justice Levin, you're on mute. Thanks. I guess a lot of people like to have me muted from time to time, but I did it I did it to myself. So thank you for your briefs and your argument here today. We will take the matter under advisement and issue an opinion forthwith.